[L. A. No. 1285.   Department Two.—August 8, 1904.]

FRANK VAIL, and JOHN L. DAVIS, Respondents, v.
GEORGE W. FREEMAN, and FRANK NELSON, Ap-
pellants.

SPECIFIC PERFORMANCE—CONTRACT FOR OIL STOCK—PERFORMANCE BY
PLAINTIFFS—FINDINGS—CONFLICTING EVIDENCE.—In an action to
enforce specific performance of a contract for one hundred thousand
shares of the capital stock of an oil company, in consideration of
the sinking of an oil-well as stipulated, where the judgment was
for the plaintiffs, and the court found upon conflicting evidence that
the plaintiffs had duly performed all the conditions of the contract
on their part to be performed, and had finished and operated the
well as stipulated, and that oil was not found therein in paying
quantities, the findings cannot be disturbed upon appeal.

ID.—FAILURE TO KEEP OUT WATER.—Where there was no provision in
the contract that the plaintiffs should keep the water out of the
well, and it appeared that the plaintiffs used proper and necessary
casing, and used diligent effort to keep out the water, which they
were unable to do by reason of the porous character of the shale,

the failure to do so does not tend to show that the contract was not completed when it was complied with in every respect called for by the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion.

J. C. Brown, and W. H. Savage, for Appellants.

The failure to shut out the water from the well was a failure of performance on plaintiffs' part, it not being naturally impossible to case out the water. The difficulty of performance will not avail. (*The Harriman,* 9 Wall. 172; *Klauber* v. *San Diego Street-Car Co.,* 95 Cal. 358; *Wilmington Transportation Co.* v. *O'Neil,* 98 Cal. 5; *Barrere* v. *Somps,* 113 Cal. 104; *Sample* v. *Fresno Flume etc. Co.,* 129 Cal. 228.) The findings are against the evidence.

Charles D. Ballard, and Jesse F. Waterman, for Respondents.

There is evidence to sustain every finding and the conclusions reached by the court, and the findings showing full performance on the part of plaintiffs will not be disturbed upon appeal by reason of conflicting evidence. (*Putnam v. Lamphier,* 36 Cal. 151; *Statler* v. *Broedel,* 89 Cal. 184; *Wallace* v. *Maples,* 79 Cal. 433; *Estate of Kohler,* 79 Cal. 313; *Capital Savings Bank v. Reel,* 62 Cal. 419; *People* v. *Hennessy,* 59 Cal. 568.)

COOPER, C.—Action to compel the specific performance of a contract by defendants to deliver one hundred thousand shares of the capital stock of the Pioneer White Oil Company. The case was tried before the court and judgment entered for plaintiffs.

Defendants appeal from the judgment and order denying their motion for a new trial.

The controversy arises out of a contract made by the defendants as parties of the first part and plaintiffs as parties of the second part, on the first day of May, 1900. The material portions of said contract are as follows:—

"Third: The parties of the second part hereby agree in consideration of receiving from the parties of the first part one hundred thousand shares of the said capital stock fully paid up and non-assessable that they will erect a derrick and drill an oil-well on the said lands at a point to be selected by them to a depth of 1,100 feet unless oil in paying quantities, as hereinafter in these presents set out, be struck at a less depth; said well to be fully completed and finished by them and provided with proper and necessary casing, perforated at proper places, tubing, pump, and all necessary connections thereof put therein to the proper depth to properly pump the said well and everything completed ready for pumping; such sinking of said well and everything completed ready for pumping; such sinking of said well, and completion of the same to be at the expense and charges of the said parties of the second part, and to be so completed without any lien, charge, claim, or encumbrance upon the said land, or upon the parties of the first part.

"Fourth: That the said parties of the second part, for the purpose of testing the full capacity of the said well, shall at their own expense pump the same for seven successive days, after the said well shall have been completed. . . .

"Seventh: In addition to the said derrick and well so completed, with all necessary casing, the said parties of the second part shall pay to the said parties of the first part the sum of $5,000, as follows: $1,000 in cash on the execution hereof, the receipt whereof is hereby acknowledged; $2,000 when the well is so completed; and $2,000 six months thereafter; but should oil not be found in said paying quantities in the said well, then the said parties of the second part shall not pay to the said parties of the first part the said last two payments of $2,000 each, but will be released therefrom.

"Eighth: Upon the said completion of the said well, as aforesaid, by the said parties of the second part, under the terms of this agreement, and that whether oil in paying quantities be found therein or not, the parties of the first part agree to deliver to the said parties of the second part the said 100,000 shares and assign the same to and cause certificates therefor to be issued to the said parties of the second part either jointly or in such proportion as the said parties of the second part shall agree upon between themselves, and notify the said parties of the first part of such agreement."

The findings of the court challenged by appellants are, first, "that pursuant to, and in accordance with the terms of said contract, the plaintiffs duly carried out and performed all the conditions and covenants thereof on their part to be performed, and completed the work agreed by them to be performed, and finished the well therein described on the 20th day of March, 1901, and thereupon put the pump on said well and pumped the same for a period of seven days thereafter, as required by the said contract," and, second, "that oil was not struck or encountered in paying quantities in said well either to the extent of ten barrels per day, or to any other extent more than a mere trace thereof." The sole contention of appellant is, that these two findings are not supported by the evidence. Under the well-settled and oft-repeated rule that the trial court is the final arbiter of all questions of fact upon which there is a conflict in the evidence, we cannot disturb the findings if there is substantial evidence to support them. We have carefully examined the evidence and find it sufficient.

As to the second of said findings, Frank Vail, one of the plaintiffs, testified as to finding oil in the well: "There was nothing ever showed up except a trace now and then on the water. I did not see any oil on the water at any time."

The witness Putnam testified that in boring the well they found no oil—"only some rainbow colors on the water that might have come off the tools or off the sand-line."

Appellant has not called our attention to any evidence that oil was found in any perceptible quantity in the well. It is therefore useless to further discuss the second finding.

As to the first finding, the appellants do not claim that the well was not drilled to the depth provided for in the contract and completed by plaintiffs within the time provided, without any lien, charge, or encumbrance thereon of any kind. Their contention is, that the plaintiffs did not properly shut off and case out the water in the said well, and that the contract was not completed because the water should have been kept out, and that the result of water flowing into the well is to drive away and hold out the oil that would otherwise run into the well.

There is no provision in the contract that the plaintiffs should keep the water out of the well. They agreed to pro-

vide the well "with proper and necessary casing, perforated at proper places, tubing, pump, and all necessary connections thereof put therein to the proper depth to properly pump the said well, and everything completed ready for pumping." If plaintiffs complied with their contract in every respect, and yet the water could not be kept out, still they complied with their contract. There is evidence tending to show that plaintiffs used proper and necessary casing and otherwise complied with their contract. Plaintiff Frank Vail testified that they used every means to keep the water out, but could not do so; that the formation in places was porous, shaly rock with occasional water and gravel; that they put down 1,105 feet of 5⅜ casing; put on a packer, and perforated it.

The witness Putnam testified that when they were seven hundred feet deep they put in 7⅝ casing to the bottom of the hole and drove it, but still did not shut the water off; that "after that we put in our tubing and pumped seven days and nights"; that they were attempting to shut the water off all the time, and were engaged in this about two and a half months.

The witness Overman, a well-driller by occupation, testified that in his opinion all was done in the way of shutting off the water that could be done. The witness Farr testified to the same effect, and further said: "Impossible to shut water off in crooked-up and broken shale such as was in the well in question."

There is other evidence in the record of a contradictory nature, but the above supports the findings.

We advise that the judgment and order be affirmed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

                Lorigan, J., Henshaw, J., McFarland, J.

[L. A. No. 1246.    Department Two.—August 11, 1904.]

## W. H. CLARK, Respondent, v. CITY OF SAN DIEGO, Appellant.

QUIETING TITLE—ACTION AGAINST CITY—DEFENSE—LIEN FOR DELIN-
QUENT TAXES—STATUTE OF LIMITATIONS—EXTINGUISHMENT OF LIEN.
—In an action to quiet title against a city, a defense of a lien for
delinquent taxes cannot be sustained where the right of action for
the collection of the taxes is lost under the statute of limitations.
In such case the lien therefor is extinguished under section 2911
of the Civil Code.

APPEAL from a judgment of the Superior Court of San
Diego County and from an order denying a new trial. N. H.
Conklin, Judge.

The facts are stated in the opinion of the court.

H. E. Doolittle, City Attorney, for Appellant.

Withington & Carter, for Respondent.

HENSHAW, J.—This is an action to quiet title. As de-
fenses to the action, defendant pleaded the liens for delinquent
taxes for the years 1890 and 1893, and prayed that the taxes
be decreed valid and subsisting liens upon the property. Ad-
mittedly, upon the authority of the *City of San Diego* v. *Hig-
gins,* 115 Cal. 170, and *Dranga* v. *Rowe,* 127 Cal. 506, the
right of action for the collection of the taxes according to
the statute of 1880, page 136, is lost. The court decreed, under
section 2911 of the Civil Code, and upon the authority of
*Dranga* v. *Rowe,* that the lien of the taxes was likewise lost,
and quieted plaintiff's title accordingly. It is here contended
that a distinction is to be drawn between the case of *Dranga*
v. *Rowe* and the case at bar, since in the former case the
defendant sought affirmative relief that no decree should be
rendered quieting plaintiff's title, except upon payment of
the assessed taxes, whereas, in the case at bar, it is asked
only that the taxes be decreed to constitute subsisting liens.
There is, however, no difference in principle between the cases.
*Dranga* v. *Rowe* was decided upon the theory that the lien

was extinguished, and the trial court was therefore correct in its ruling and decision in the case at bar.

For which reason the judgment and order denying defendant's motion for a new trial are affirmed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.

---

[Sac. No. 1149.   Department One.—August 13, 1904.]

## TOWN OF SUSANVILLE, Respondent, v. THOMAS H. LONG, Appellant.

LIQUOR LICENSE—ACTION BY TOWN—INSTITUTION BY MARSHAL—EVIDENCE.—Under a town ordinance imposing a liquor license, and providing that the marshal shall commence suit therefor in the name of the town, in an action by the town, the testimony of the marshal that he consulted with the attorney for the town, and gave him a list of those persons refusing to take out a license, for the purpose of having this and other actions instituted, sufficiently shows the institution of the suit by the marshal.

ID.—CAPACITY TO SUE—WAIVER OF OBJECTION.—Where the defendant did not raise the question of the capacity of the town to bring the suit, either by demurrer or answer, he is deemed to have waived it.

ID.—ACTION FOR QUARTERLY LICENSE-FEE—INDEBTEDNESS TO TOWN—SUPPORT OF FINDING.—In an action to recover a quarterly license-fee, evidence showing that the defendant carried on the business of selling liquors during a quarter without having taken out a license therefor, though demand had been made therefor by the town marshal, and that the ordinance required a license-fee of fifty dollars per quarter, sufficiently supports a finding that the defendant was indebted to the town in the sum of fifty dollars.

ID.—PASSAGE OF ORDINANCE—TRUSTEES DE FACTO.—The town ordinance cannot be collaterally assailed by the defendant on the ground that it was not passed by trustees de jure. It is sufficient that they were at least trustees de facto when they passed the ordinance. The lawful acts of an officer de facto, so far as the rights of third persons are concerned, if done within the scope and by the apparent authority of office, are as valid and binding as if he were the officer legally elected and qualified for the office, and in full possession of it:

ID.—REGULAR MEETING—ADJOURNMENT—PRESUMPTION UPON APPEAL.—
Where an ordinance fixing the time for regular meetings was passed
at a regular meeting, which was regularly adjourned to the date
at which the liquor ordinance was passed, if the record upon appeal
is silent as to the time of its introduction, it must be presumed
that it was introduced at least five days before its passage.

ID.—EVIDENCE—WAIVER OF OBJECTION—GENERAL OBJECTION.—Where the
ordinance, when introduced in evidence, was not objected to on the
ground that it was not properly introduced, objection on that ground
is waived. Such objection was not included in the general objection
that the ordinance was irrevelant, incompetent, and immaterial.

APPEAL from a judgment of the Superior Court of Lassen
County. F. A. Kelley, Judge.

The complaint alleged that the defendant carried on the
business of selling liquor without a license from the first day
of April, 1902, to and including the thirtieth day of June
following, after having refused to take out the license-fee
of fifty dollars therefor, as required by the ordinance pleaded,
and demanded judgment therefor. The court found that the
fee of fifty dollars per quarter was imposed by the ordinance,
and that the quarters were fixed so as to begin with the first
days of January, April, July, and October, and found in
favor of the allegations of the complaint and that the de-
fendant is indebted to plaintiff in the sum of fifty dollars.

Further facts are stated in the opinion.

N. J. Barry, for Appellant.

H. D. Burroughs, and J. E. Pardee, for Respondent.

COOPER, C.—Action to recover fifty dollars claimed to
be due the plaintiff from defendant as a license for carrying
on the business of selling intoxicating liquors within the cor-
porate limits of plaintiff, under ordinance No. 7, in force at
the time of carrying on such business.

Findings were filed and judgment ordered and entered in
favor of plaintiff as prayed. Defendant prosecutes this ap-
peal from the judgment on the judgment-roll, accompanied
by a bill of exceptions.

It is contended that the suit should have been commenced
by the marshal of the town, and not by the trustees. The
ordinance provides that the marshal shall commence suit in

the name of the "Town of Susanville." The marshal testified that he consulted with the attorney for the plaintiff and gave him a list of those persons refusing to take out a license, for the purpose of having this and other actions instituted. This was sufficient to show the institution of the suit by the marshal. But were it otherwise the defendant did not raise the question as to the legal capacity of plaintiff to bring the suit, either by demurrer or answer, and is therefore deemed to have waived it. (Code Civ. Proc., secs. 430, 433, 434.)

It is next argued that the evidence is insufficient to support the finding of the court "that the defendant is indebted to the plaintiff in the sum of fifty dollars." The bill of exceptions shows that "defendant engaged in the business of selling liquor within the corporate limits of said town of Susanville between the dates mentioned in plaintiff's complaint, and that he carried on such business without having secured a license therefor, or paying the fee or charge therefor as required by ordinance No. 7 of said town, although a demand to take out and pay for such license had been made upon him by the marshal of said town."

It also shows that the ordinance required a license-fee of fifty dollars per quarter to be paid before carrying on the business of selling intoxicating liquors within the corporate limits of plaintiff. This is sufficient to support the finding.

Finally, it is claimed that the ordinance involved is void, because not passed by trustees who were such *de jure.* The bill of exceptions shows that plaintiff was duly incorporated on the twentieth day of August 1900, and that "C. E. Emerson, J. H. Riley, J. E. Humphrey, H. W. Meylert, and J. E. Pardee were duly elected trustees of said town and that they qualified as such trustees on the twenty-fifth day of August, 1900"; that for more than ninety days said trustees failed and neglected to exercise any of the duties or functions of their respective offices; that thereafter, on March 5, 1902, the governor of the state appointed four of the same parties as trustees, and also apointed one Asher instead of said Humphrey; that the said trustees so appointed "took the oath of office as said trustees in the manner prescribed by law and filed the same in the offices of the secretary of state and county clerk of Lassen County, and thereafter duly met as such trustees."

The ordinance was passed March 25, 1902. The trustees were at least officers *de facto* when they passed the ordinance. Defendant will not be allowed in this proceeding, in which the trustees are not parties, to collaterally attack their title to office. Persons claiming to be public officers while in possession of an office, ostensibly exercising its functions lawfully and with the acquiescence of the public, are *de facto* officers. Third persons cannot be expected to know, nor to investigate in every instance, the title to such offices. As to them, such officers are what they appear to be, the lawful occupants of the office.

The lawful acts of an officer *de facto,* so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of office, as valid and binding as if he were the officer legally elected and qualified for the office and in full possession of it. The law provides machinery for trying the title to an office in an action in which the officer is a party, and the right to the office is the question involved. To allow every person prosecuted for the violation of an ordinance, in the proceedings in which he is prosecuted, to question the legality of the formation of the municipal corporation, or the title to office of its various officers, would lead to endless confusion, and embarrass the government of such municipal corporation. The taxpayer could refuse to pay taxes and defend a suit brought for their collection on the ground that the assessor was not the *de jure* assessor, or that tue tax-collector was not the *de jure* tax-collector. A person charged with resisting an officer could defend upon the ground that the officer had not been legally elected or appointed, and so on through the various departments of the municipal government in its varied business transactions with its citizens. It is hardly deemed necessary to cite authorities in support of the principles herein stated, but the following are in point: 1 Dillon on Municipal Corporations, 4th ed., p. 305; Mechem on Public Offices and Officers, sec. 330; McQuillin on Municipal Ordinances, sec. 96; 8 Am. & Eng. Ency. of Law, 2d ed., p. 823, and note; *People* v. *Sassovich,* 29 Cal. 485; *Hull v. Superior Court,* 63 Cal. 176.

Appellant further claims that the ordinance is void, because at the time it was introduced no time for holding regular meetings had been fixed by ordinance.

Section 861 of the Municipal Corporation Act provides in terms that no ordinance shall be passed at any other than a regular meeting. The bill of exceptions shows that ordinance No 1, fixing the fourth Monday in each month as the time for holding regular meetings, was passed at a regular meeting on March 24, 1902, and so far as appears five days after its introduction. This meeting was regularly adjourned till the evening of Tuesday, March 25, 1902, when ordinance No. 7, fixing the license in contest, was passed. The record fails to show when this ordinance was introduced, but it will be presumed here that it was introduced at least five days before it was passed. Not only this, but when the ordinance was offered in evidence no such objection was made to it. The objection was upon the ground that it was irrelevant, incompetent, and immaterial. It was certainly relevant, competent, and material.

We advise that the judgment be affirmed.

Chipman, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.

Hearing in Bank denied.

---

[L. A. 1277.    Department Two.—August 13, 1904.]

CHAPEA WATER COMPANY, Appellant, v. ALFRED B. CHAPMAN et al., Respondents.

OPTION TO DEVELOP AND PURCHASE WATER—MAKING UP DEFICIENCY— PURCHASE OF EXCESS—DEDUCTION OF EXPENSE—CONSTRUCTION OF CONTRACT.—Under a contract giving to the corporation plaintiff the option to develop and purchase water from a five-acre tract of the defendants, which contains a special provision for making up a deficiency in the flow to which the corporation may be entitled by further development, at its expense, but if in making such development an excess of water is made to flow, it shall have the option to purchase the excess within sixty days from finishing the development, "less the amount paid in in making the development,"

said special provision is not to be construed as requiring the defendants to compensate the plaintiff for such expense, either in money or in water, but is to be construed in harmony with the other provisions of the contract as giving to the plaintiff an option to purchase the excess within the time specified, and in making payment therefor to deduct from the amount the money actually expended in making the development.

ID.—LAPSE OF TIME FOR PURCHASE OF EXCESS.—Where no option to purchase the excess was exercised by the plaintiff "within sixty days from finishing the development," and no indication was then given of the portion of the excess which the plaintiff desired to purchase, the defendants were under no obligation to convey to the plaintiff any part of such excess, and judgment was properly rendered in their favor.

ID.—IMMATERIAL RULINGS AND FINDINGS.—Rulings upon evidence urged as erroneous, upon matters which in no respect conduced to the judgment, and findings of fact claimed to be unsupported by the evidence, upon which the judgment does not depend, are immaterial, and need not be considered.

ID.—REFORMATION OF CONTRACT—CONFLICTING EVIDENCE.—Where the plaintiff sought a reformation of the contract, which was denied by the court, and in respect of which the evidence was conflicting, the correctness of the decision of the superior court cannot be reviewed upon appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion.

James Burdett, William P. James, and William M. Northrup, for Appellant.

Stephens & Stephens, and Charles Lantz, for Respondents.

HARRISON, C.—In July, 1896, the defendants were the owners of a tract of five acres of land situate in the county of Los Angeles, a portion of the Santa Anita Rancho, upon which there was an artesian well known as the "Chapea Well," which was estimated to flow forty inches of water, measured under a four-inch pressure (an inch of water being 12,960 gallons), each twenty-four hours, and the plaintiff herein was desirous of purchasing the water flowing in said well. The parties thereupon entered into and executed a contract,

by which, in consideration of the sum of five hundred dollars then paid to the defendants by the plaintiff, they sold and delivered to it the perpetual right to take and carry away from the said well one inch of water in a continuous flow, defined as aforesaid, and agreed with it that they would at any time within two years from the date of said contract, at the option of the plaintiff and upon its demand, convey to it any other water that might be flowing in said well at the same price per inch, and that such option and demand might be exercised as to the whole or any part of said water at any one or more times during said period of two years, but not afterwards. The contract further provided that in case the defendants should develop other water in said five-acre tract the plaintiff should have the first right to the quantity of water which it might elect to purchase under the terms of said agreement in any water developed or in said tract, and might take such quantity of water from any source on said tract, if necessary to make up the quantity conveyed or to be conveyed to it. Within two years from date of the agreement the plaintiff exercised its option from time to time to purchase other water flowing in said well, to the extent of thirty-nine inches, making in all forty inches purchased by it, and proper and sufficient conveyances therefor were executed to it by the defendants. After the expiration of the said two years the flow of water in said well gradually diminished until it shrank below the forty inches purchased by the plaintiff to the extent of several inches, and the defendants, for the purpose of maintaining a supply of forty inches, caused another well to be sunk on said tract, designated as ''Chapea Well No. 2,'' by means of which there was developed sufficient water to maintain the supply of forty inches until July, 1899.

In July, 1899, it was found that the combined flow of water from both of said wells fell short of supplying forty inches by at least ten inches, and thereupon the plaintiff, for the purpose of making up the deficiency, sank another well upon said tract, called ''Chapea Well No. 3,'' by means of which it developed an additional quantity of water. The work of sinking the well and developing the water therefrom was finished on or about the 30th of September, 1899, and the plaintiff incurred expenses therein amounting to $2,581. Thereupon measurements of all of the water flowing from the three

wells were made, and the quantity of such water ascertained, and on March 24, 1900, an engineer employed therefor by the plaintiff made another measurement and found that there was then flowing from all of said wells 43.67 inches of water. The defendants thereupon declared that the extra 3.67 inches of water belonged to them, and directed the engineer to divert the same from the conduits of the plaintiff to those of the defendants. Thereafter,—viz., April 9, 1900,—the plaintiff demanded from the defendants that they execute to it a conveyance of said 3.67 inches of water, and the defendants refusing to comply with their said demand, the plaintiff commenced the present action to compel them "to convey to it sufficient water from said five-acre tract at the rate of $500 per inch, as will amount to or equal the sum of $2,581.00, money laid out and expended by it in the development of water upon said tract." Judgment was rendered in favor of the defendants, from which and from an order denying a new trial the plaintiff has appealed.

The contract between the plaintiff and the defendants contains the following provision:—

further development, at the rate of five hundred dollars ($500) per inch, defined as aforesaid. And said first parties will, on demand, execute a proper deed of grant and conveyance thereof to said second party, or its assigns.''

